```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION


Melissa S. Nolan,              :

       Plaintiff,              :

     v.                        :    Case No. 2:12-cv-0477

Commissioner of Social         :    JUDGE ALGENON L. MARBLEY
    Security,                       Magistrate Judge Kemp
                               :
       Defendant.
```

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Melissa S. Nolan, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.  Those applications were filed on January 8, 2008, and alleged that plaintiff became disabled on July 27, 2001.

After initial administrative denials of her applications, plaintiff was given a hearing before an Administrative Law Judge on August 26, 2010.  In a decision dated October 27, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on April 9, 2012, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on August 24, 2012.  Plaintiff filed her statement of specific errors on October 15, 2012.  The Commissioner filed a response on December 18, 2012.  No reply brief was filed, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 42 years old at the time of the administrative hearing and who has a GED and some post-high

school business education, testified as follows.  Her testimony appears at pages 31-51 of the administrative record.

Plaintiff last worked at Speedway for several months in 2007.  She was a food steward, a job which required her to be on her feet, and she had trouble due to back and foot problems.  The prior year she worked at a different service station as a cashier but was still limited by her foot problems even though she was allowed to sit on a stool while working.  In 2001 she was working as a cashier at a Certified station, and tried to come back to that job after hurting her back, but was unable to do so.

Plaintiff testified that she had back surgery in the L5-S1 area in 2004 and that she had pain both above and below the surgery site.  Her pain was aggravated by activity and not helped by medication.  She was limited in her ability to reach overhead, and spent three to four hours every day lying down and using a heating pad.  She also broke her right foot, and it caused some problems for her if she were on her feet too long.  Additionally, she used an inhaler for breathing problems.  She was trying to quit smoking and to lose weight.

As far as her abilities go, plaintiff said she could stand for twenty minutes to half an hour before her back starts to hurt and her leg starts to burn.  She could sit for half an hour to 45 minutes but would need a ten to fifteen break after doing so before she could start working again.  Her lifting was limited to about five pounds.  She could do some household chores like dishes and cooking but needed to be seated to do so.  She could not carry a basket of laundry or make the bed, and she used a shower chair.  On an average day, she would read or watch television or sit on her front porch and visit with neighbors.

### III. The Medical Records

The medical records in this case are found beginning on page 329 of the administrative record.  The pertinent records can be

summarized as follows. Because all of plaintiff's claims of error relate to her psychological rather than her physical limitations, the Court will focus its review of the records primarily on psychologist Allan Rain's evaluation, which is the only assessment of plaintiff's mental functional capacity made by an examining source.

Mr. Rain examined plaintiff on May 21, 2008.  She reported to him a childhood traumatic experience which was still producing symptoms of PTSD such as flashbacks, nightmares, intrusive thoughts, hypervigilance, and revivification experiences.  She also described symptoms of depression, anxiety, and dysphoria.  She also said she was irritable and easily frustrated.  She had recently begun to take medication for her psychological conditions.  She also reported domestic violence in her first marriage.

Plaintiff told Mr. Rain about her history of suffering an on-the-job injury in 2000, followed by an award of workers' compensation benefits.  She was still in pain which was somewhat alleviated by medication.  She had never had psychiatric intervention or mental health counseling.  She also described for him a long history of cocaine abuse and exhibited memory problems and difficulty concentrating.  She lost two different jobs due to issues with her drug use.

Dr. Rain observed that plaintiff was morbidly obese, noticeably passive-dependent, and depressed and defeated.  Her affect was blunted or flat "and in a manner that seemed organic." She had trouble understanding even simple inquiries and instructions.  Testing showed serious problems with recall and concentration.  She stated she had no active social life, outside hobbies, or interests.

Mr. Rain concluded, based on his examination, that plaintiff suffered from a mixed personality disorder and PTSD as well as a

mood disorder.  He thought her ability to related to others was markedly impaired, as was her ability to understand and carry out simple instructions, to maintain attention, concentration, persistence and pace and to withstand the stressors and pressures associated with daily work.  Finally, he suggested that her ability to manage benefits, should they be awarded, was "problematic."  (Tr. 389-95).

Dr. Finnerty, a state agency reviewer, completed a mental residual functional capacity report for the period from January 8, 2008 to June 17, 2008.  He found only moderate limitations, and no marked limitations, in various work-related areas, including the ability to maintain attention and concentration for extended periods, to work on schedule, to work closely with others, to relate to the public, to respond to changes in the work setting or to supervision, and to complete a work day or work week without interruption from psychologically-based symptoms.  In the narrative portion of his report, he reviewed Mr. Rain's assessment but disagreed with his conclusions as inconsistent with both other evidence in the file and plaintiff's own statements.  He concluded that plaintiff could work in a low stress environment that did not require work at a consistent pace.  (Tr. 396-99).  The only mental impairment he found to have existed prior to 2008 was a substance addiction disorder.

IV.  The Vocational Testimony

A vocational expert, Dr. Oestreich, also testified at the administrative hearing.  His testimony begins at page 51 of the record.  He characterized plaintiff's past work as a cashier as light and unskilled.

Dr. Oestreich was asked to assume that plaintiff was limited to working at the light exertional level but could not stand or walk more than two hours in an eight-hour work day, could occasionally climb ramps and stairs but could never climb

ladders, ropes or scaffolds, could occasionally stoop, crouch, and crawl, and needed to avoid concentrated exposure to extreme cold, dust, fumes and gases. From a psychological viewpoint, he was asked to assume that plaintiff could understand, remember and carry out simple tasks and instructions, could maintain concentration and attention for two-hour segments over and eight-hour work period, could respond appropriately to supervisors and coworkers, and could adapt to simple changes and avoid hazards in a setting without strict production standards. With those restrictions, plaintiff could, in Dr. Oestreich's view, not do her past work due to the standing requirements and exposure to fumes, but she could perform a number of unskilled sedentary jobs such as inspector, hand packer, and assembler, and a total of about 6,000 jobs in the Columbus area. However, if plaintiff needed to take unscheduled breaks and to lie down for up to four hours during the work day, she could not do even those jobs.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 8 through 21 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff met the insured requirements for disability benefits through June 30, 2008. Next, plaintiff had not engaged in substantial gainful activity from her alleged onset date of July 27, 2001 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including depression, right foot pain, degenerative disc disease at L5-S1, asthma, chronic obstructive pulmonary disease, and obesity. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff could work at the light exertional level but could not stand or more than two hours or walk more than two hours in an eight-hour work day, could occasionally climb stairs but could never climb a rope or ladder, could occasionally stoop, crouch, and crawl, and needed to avoid concentrated exposure to extreme cold, dust, fumes and gases. Mentally, she was able to understand, remember and carry out simple tasks and instructions, was able to maintain concentration and attention for two-hour segments over an eight-hour work period, could respond appropriately to supervisors and coworkers, and could adapt to simple changes and avoid hazards in a setting without strict production standards. The ALJ found that, with these restrictions, plaintiff could not perform any of her past relevant work, but she could perform those jobs identified by the vocational expert, such as inspector, packer, and assembler. Consequently, the ALJ concluded that plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, plaintiff raises three issues. She argues (1) the ALJ had no legitimate basis for rejecting the opinion of the sole psychological evaluator, Mr. Rain; (2) the hypothetical question posed to Dr. Oestreich was improper because it failed to incorporate all of the limitations found by Mr. Rain; and (3) the ALJ erred in finding that plaintiff's report of debilitating psychological symptoms was not credible. The Court generally reviews the administrative decision of a Social Security ALJ under this legal standard:

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is

"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

   All of plaintiff's claims of error (with one minor exception having to do with Dr. Finnerty's report) are logically related. If the ALJ did not have good reasons to reject Mr. Rain's opinions - and particularly if he had to find that plaintiff's description of her psychological limitations were credible - then Mr. Rain's view of plaintiff's limitations should have been accepted and either used as the basis for a finding that plaintiff's condition met or equaled a condition described in the Listing of Impairments, or incorporated into the hypothetical question posed to Dr. Oestreich. The Court therefore must examine the ALJ's rationale for discounting Mr. Rain's opinions.

   In determining that plaintiff's psychological impairment did

-7-

not meet the Listing, the ALJ necessarily rejected Mr. Rain's view of the severity of plaintiff's limitations, finding that she did not have any marked limitations, but rather only mild restrictions in activities of daily living and moderate difficulties with social functioning and with concentration, persistence and pace.  In support of those conclusions, the ALJ found that plaintiff was able to care for herself, to cook, to do simple grocery shopping, and to appear at the consultative examination appropriately dressed with acceptable hygiene and grooming.  He also noted that she told Mr. Rain she got along fine with neighbors, the public, and authority figures in general.  He did not explain why he thought she had only moderate difficulties with respect to concentration, persistence and pace. (Tr. 13).

A more complete explanation of the ALJ's reasoning appears in the section of the administrative decision devoted to the ALJ's residual functional capacity finding.  There, the ALJ stated that Mr. Rain's

> opinion cannot be given any weight, as it is not supported by and is inconsistent with the greater weight of the medical evidence in this record, to which this psychologist did not have access.  Rather, this psychologist, who did not have an ongoing treatment relationship with the claimant, based his opinion on a one-time examination of the claimant.  He appears to have relied primarily on the claimant's subjective complaints, which, as noted below, are not entitled to full credibility.  A consultant cannot be expected to make an accurate assessment when he has not been provided with accurate information.

(Tr. 15).  The ALJ adopted Dr. Finnerty's opinion as being "consistent with and well supported by the evidence of the record as a whole ...."  Id.

In terms of assessing plaintiff's credibility, the ALJ determined that the objective medical evidence did not support many of her claimed symptoms.  He also noted that she appeared to

be able to engage in a wide variety of activities, including taking care of three young children, which were inconsistent with total disability; that she engaged in questionable behavior, including driving without a license and abusing or selling pain medications; and that she made inconsistent or exaggerated reports of her condition and situation to medical providers. Based on these factors, the ALJ did not fully credit her testimony, but did incorporate those complaints which he found to be consistent with the record into his residual functional capacity finding.  See Tr. 18-19.

Plaintiff argues that the ALJ did not have a substantial basis either for his decision to discount Mr. Rain's opinions or her subjective reports of psychological symptoms.  In support of this argument, she asserts that Mr. Rain's opinions were well-supported by the evidence, including his observations made during the examination, the tests he administered, and plaintiff's reported history of trauma and associated symptoms, and she disagrees that his views were based primarily upon her own statements about her functional abilities.  She also argues that the ALJ did not explain what evidence Mr. Rain did not have access to and substituted his own judgment for Mr. Rain's with respect to certain matters such as test results.  She discounts Dr. Finnerty's report as conclusory in nature, and contends that the amount of training and experience possessed by Dr. Finnerty, which was one of the reasons the ALJ gave for preferring his opinion to Mr. Rain's, did not serve to distinguish him from Mr. Rain, who was also chosen by the Commissioner to perform a consultative examination and who must have possessed similar qualifications.  Finally, she attacks the ALJ's credibility finding, although her argument on that point does not address in detail the specific reasons given by the ALJ for finding her less than fully credible.

A consultative examiner, like Mr. Rain, is not considered a

treating source, and his opinion need not be given controlling weight in the absence of contrary evidence. Rather, such an opinion

> is to be weighed considering all of the factors identified in 20 C.F.R. § 404.1527(d)(1) through (6). These factors include, among others, the examining relationship, the treatment relationship, the supportability of the opinion by relevant evidence, the consistency of the opinion with the record as a whole, and the specialization of the source providing the opinion. See 20 C.F.R. § 404.1527(d)(1) through (6).

Bray v. Astrue, 2012 WL 71015, *3 (E.D. Ky. Jan. 10, 2012). Further, although the record must contain substantial evidence supporting the rejection or discounting of a consultative examiner's opinion, social security regulations "require[] ALJs to give reasons for only treating sources." Smith v. Comm'r of Social Security, 482 F.3d 873, 876 (6th Cir. 2007). On the other hand, when an ALJ completely ignores evidence from non-treating sources that is inconsistent with the ALJ's residual functional capacity assessment, a remand may be required. See, e.g., Johnson v. Astrue, 2010 WL 5559542 (N.D. Ohio Dec. 3, 2010), adopted and affirmed 2010 WL 5478604 (N.D. Ohio Dec. 30, 2010).

    Here, the ALJ did not ignore Mr. Rain's opinion. Rather, he expressly rejected it as unsupported by any other evidence in the record - which is an accurate reflection of that evidence - and as inconsistent with the assessment of Dr. Finnerty. He also correctly noted that a good part of Mr. Rain's opinion was based on plaintiff's subjective report of symptoms. While it is true that Mr. Rain also administered some testing, Dr. Finnerty had the opportunity to review the same test results when he reached his conclusions, and the ALJ was entitled to rely on his professional opinion as to the significance of those results. Mr. Rain also commented that there was a wide variance between the severity of plaintiff's symptoms and her functional ability, and the ALJ was entitled to rely on factors such as the absence

-10-

of any treatment for psychological conditions and the fact that plaintiff had been able to work, and to attempt trial periods of work, without ever being discharged or having to discontinue work due to psychologically-based symptoms.  Further, the ALJ articulated reasons for finding plaintiff a less than credible source of information about her symptoms and functionality, and plaintiff's statement of errors does not take issue with any specific reason why the ALJ reached that conclusion.  The ALJ appears to have considered factors which are appropriate under 20 C.F.R. §404.1529(c)(3) and articulated them sufficiently to justify the Court's decision to give substantial deference to the ALJ's decision on this issue.  See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).  Overall, the Court finds no error in the way in which the ALJ dealt with the conflict in the evidence concerning plaintiff's psychological impairment and her ability to function in the workplace.

    The only other issue plaintiff raises concerns the ALJ's adoption of Dr. Finnerty's opinion.  Plaintiff claims that Dr. Finnerty indicated different and more significant limitations in functioning than the ALJ found to exist.  In particular, plaintiff argues that Dr. Finnerty's view that she was limited to working in a low-stress environment and performing tasks which did not require her to work at a consistent pace are not the same as the ALJ's finding that she could maintain attention and concentration over two-hour periods, respond appropriately to coworkers and supervisors, and adapt to simple changes and avoid hazards in a work setting without strict production standards. In response to this argument, the Commissioner's memorandum states that the ALJ's residual functional capacity findings, while not reflecting Dr. Finnerty's opinion word for word, "reasonably accounted for the credible evidence of Plaintiff's mental limitations, including the opinion of Dr. Finnerty, by incorporating restrictions related to simple tasks and reduced

pace, including limitations designed to reduce stress and account of concentration deficits by accommodating production at a reduced pace and breaks every two hours." Commissioner's Memorandum, Doc. 16, at 16.

In support of this argument, the Commissioner cites to Groves v. Astrue, 2012 WL 10385 (S.D. Ohio Jan. 3, 2012). In Groves, the evidence indicated a moderate impairment in persistence due to pain and depression. The ALJ characterized this limitation as consistent with doing non-complex and low stress work (which was "defined as no fixed production; no above average pressure for production; no non-routine work; no hazardous work"), and the Court found that this characterization appropriately addressed the restrictions imposed by the claimant's mental health specialist. Groves, 2012 WL 10385, at *9. Clearly, the restrictions imposed here by the ALJ on no more than simple changes in the work, no hazards, and no strict production standards, are the functional equivalent of low-stress work, which is one of the two limitations found in Dr. Finnerty's narrative. Groves therefore provides partial support for the Commissioner's argument.

There is case law supporting the balance of that argument as well. For example, in Scott v. Comm'r of Social Sec., 2013 WL 237296, *18 (N.D. Ohio Jan. 3, 2013), adopted and affirmed 2013 WL 237192 (N.D. Ohio Jan. 22, 2013), the court found that by limiting the claimant to work that did not have production quotas and which involved only simple routine tasks, the ALJ "adequately capture[d] any restrictions to Plaintiff's ability to sustain concentration, persistence or pace." While it is true that a hypothetical question which omits "speed- and pace-based restrictions completely" may be fatally flawed, see Ealy v. Comm'r of Social Security, 594 F.3d 504, 516 (6th Cir. 2010), that is not what happened here. This Court, similar to the Scott court, finds that the ALJ's residual functional capacity

determination adequately accounted for limitations in pace by eliminating strict production quotas, allowing for breaks every two hours, and eliminating a number of factors which would cause disruption to the steady flow of work.  Under these circumstances, there is no reversible error in the way in which the ALJ accounted for the mental limitations described by Dr. Finnerty.  The ALJ's decision is therefore supported by substantial evidence in all material respects.

## VII.   Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

## VIII.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See _Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).

-13-

                                              <u>/s/ Terence P. Kemp</u>
                                              United States Magistrate Judge